JOHN ARNER v. STATE.

No. A-8374. Aug. 16, 1932.
Rehearing Denied Sept. 30, 1932.
(15 Pac. [2d] 1046.)

Bridges & Ivy, for plaintiff in error.

J. Berry King, Atty. Gen., and Gus Rinehart, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Jefferson county of manslaughter in the first degree in the killing of J. W. Browning, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of ten years.

The evidence of the state was that J. W. Browning was an officer in the town of Ryan; that on the evening of the killing defendant, with Bill Wray, was in a car; that defendant was driving this car up and down the streets in a reckless manner and making a U turn in the street not far from the home of Browning; that finally defendant turned his car in the wrong way in front of the Epperson cafe; that defendant and Wray had been drinking and were boisterous and using violent, profane language; that a bystander told defendant that, if Browning was there, he would arrest him; that defendant said, if Browning bothered him, he would fix him like he did Bass; that defendant and Wray ordered curb service of coffee spiked with whisky, and told some of the fellows to get out of the way, they were going to do some shooting; that Wray got out of the car and went into the cafe; that Browning came and sat down on a stool on the sidewalk, near this cafe; that defendant called to Browning, and Browning stepped out to the car, resting his arm on the car door and placing one of his feet on the running board; that suddenly an altercation began; that Browning was armed with a small two-shot pistol; that he suddenly jumped back and ducked down behind the car; that immediately thereafter two shots were fired, one by Browning and one by defendant from the car; that Browning ducked around the side of the car and caught defendant by the hand and tried to pull him out of the car; that Browning snapped his pistol, but it stuck; that Wray ran out and interfered, and Browning ran from the car up over the sidewalk into the cafe; that defendant got out of his car with a gun in his hand, and, running up to the cafe door, fired five shots through the screen at Browning; that Browning fled towards the back of the cafe, into a booth, and was holding a table up in front of him; that defend-

ant came into the cafe, and, when within five or six feet
of Browning, fired another shot; that Browning dropped
the table and slumped to the floor and died not long after-
ward; that defendant was wounded in the right shoulder
apparently from Browning's first shot; that defendant
had been convicted in the district court of Jefferson coun-
ty of robbery with firearms.

Defendant, testifying for himself, admitted that Wray
had been drinking, and said that he was driving Wray
around in his car because he was noisy and to keep him
out of trouble, but denied that defendant had been drink-
ing; that shortly after they pulled up in front of the cafe,
he called to Browning and said "What do you say, Jud";
that Browning came up to his car and began to curse
him for talking to him; that Browning stuck a gun in
his face and he knocked his hand to one side; that Brown-
ing went behind the car and fired at him through the
glass in the back; that Browning then came around the
side of the car and grabbed him by the hand and tried to
shoot him again; that, when Wray interfered, Browning
left and walked into the cafe; that there was a gun rack
in there and he thought Browning had gone after another
gun; that he had a gun on the floor of his car under his
feet that would fire seven shots; that he grabbed this gun
and hurried up onto the sidewalk and began to shoot at
Browning in the cafe; that Browning was headed toward
the gun rack when he fired the first shot; that after the
first shot Browning left the gun rack and went toward
the back of the cafe; that he followed Browning in and
found him back in a booth with a table up, prepared to
strike him with it; and that he fired the final shot believ-
ing that Browning intended to strike him with the table.
He denied he fired at Browning from the car.

Defendant is corroborated as to part of this testimony by other witnesses, but none of these witnesses claimed to have heard much of what was said, or to know exactly when or how the difficulty started. The state on rebuttal showed that some of these witnesses were not present, and that others had made statements different to that which they testified to, or that they had said they did not see it and knew nothing about it.

Defendant first contends that this evidence is insufficient to support the verdict of the jury.

This court has many times held that the credibility of the witnesses and the weight to be given their testimony is exclusively for the jury, and that, where there is a conflict in the evidence, the verdict of the jury will not be disturbed if there is any evidence in the record from which the jury can legitimately conclude that defendant is guilty of the offense charged.

There is competent evidence in the record sufficient to support the verdict of the jury.

Complaint is made that the court erred in rejecting competent testimony offered by the defendant.

The particular complaint is that the court refused to permit defendant to show what he had said after the killing and after he had left the cafe and was sitting, or leaning against a post outside. The state objected on the ground that it was a self-serving declaration and no part of the res gestae, which objection was sustained by the court.

In Gransden v. State, 12 Okla. Cr. 417, 158 Pac. 157, this court said:

"In a prosecution for murder, self-serving declarations of the defendant made about 10 minutes after the

homicide and in reference to it, held properly excluded as no part of the res gestae."

To the same effect are: Birdwell v. United States, 10 Okla. Cr. 159, 135 Pac. 445; Pope v. State, 15 Okla. Cr. 162, 175 Pac. 727.

Defendant next complains of instruction No. 18.

This instruction states the rule that even if Browning began the difficulty and fired the first shot without justification, that if thereafter he, in good faith, abandoned the difficulty and made known this fact to defendant, and that at the time the fatal shot was fired defendant was in no danger either real or apparent of death or great bodily harm at the hands of Browning, he could not be acquitted on the ground of self-defense.

This instruction fairly states the law as applicable to the facts in the case, and it was not error to give the same.

No fundamental error appearing in the record, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.